UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WILLIAM ADAMS | *CIVIL NO. 6:16-1426 |
| VERSUS | *JUDGE DOHERTY |
| ALL COAST, LLC. | *MAGISTRATE JUDGE HANNA |

### REPORT AND RECOMMENDATION

Initially pending before the Court for report and recommendation was a Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6), filed by All Coast, LLC ("All Coast") . [rec. doc. 16 ].  Plaintiff, William Adams ("Adams"), filed an opposition [rec. doc. 25], to which All Coast filed a reply.  [rec. doc. 32].  In its reply, All Coast  submitted documents which are not part of the plaintiff's Complaint and which  this Court determined it would not exclude.  Therefore, pursuant to Rule 12(d), the Court converted the motion to dismiss to a motion for summary judgment under Rule 56. [rec. doc. 33]. After allowing time for limited discovery requested by the plaintiff, the plaintiff filed a supplemental memorandum in opposition to the motion with exhibits, [rec. doc. 43].  All Coast subsequently filed its supplemental reply memorandum with exhibits. [rec. doc. 46].  A hearing on the Motion was held on April 20, 2017.

For the reasons set out below, it is recommended that the motion for summary judgment be **denied as premature.**

## BACKGROUND

This lawsuit was filed in the United States District Court for the Southern District of Texas by Adams, individually and on behalf of all others similarly situated, against All Coast, asserting claims arising under the Fair Labor Standards Act ("FLSA"). The case was subsequently transferred to this Court.

Adams alleges that All Coast owns and operates a fleet of lift boats for the offshore oil and gas industry in the Gulf of Mexico. [rec. doc. 1, ¶ 11]. Adams further alleges that he was employed by All Coast "as an able-bodied seaman and crane operator . . . *primarily responsible* for operating a crane that serviced offshore oil and gas platforms." [*Id*. at ¶ 12] (emphasis added). Adams claims that he was not exempt from the FLSA overtime provisions and that he regularly worked in excess of forty hours per week, but was paid a flat sum on a day rate basis. [*Id*. at ¶ 23, 17, 18, 21]. Adams therefore alleges that All Coast violated the FLSA by mis-classifying him and other similarly situated employees as exempt from the overtime wage provisions of the Act. [*Id*. at ¶ 34-35]. Adams further alleges that All Coast failed to keep proper time and pay records of hours worked by, and wages paid to, nonexempt employees. [*Id*. at ¶ 37-38].

All Coast filed a motion to dismiss this collective action on the basis that Adams alleges that he was employed as an able-bodied seaman, and seaman are exempt from

the overtime requirements of the FLSA pursuant to 29 U.S.C. § 213(b)(6). In addition, All Coast contends Adams' allegations regarding All Coast's alleged failure to maintain accurate records are insufficient to state a claim for relief. [rec. doc. 16].

In opposition, although Adams alleges that he was employed as "an able-bodied seaman and crane operator [and that he] was primarily responsible for operating a crane that serviced offshore oil and gas platforms", he contends his job title alone is insufficient to establish the exempt status of an employee. Such a determination requires All Coast to present facts sufficient for this Court to conclude Adams was employed primarily as a seaman, as opposed to primarily as a crane operator. [rec. doc. 25].

In response, All Coast submitted documents (which are not part of the complaint) which include an affidavit of All Coast Vessel Manager Jeff Jarred. Attached to the affidavit is the All Coast Job Description for Able-Bodied Seamen in general. In his affidavit, Jarred attests to the fact Adams was employed as an able-bodied seaman and sets forth facts to attempt to establish his seaman status. [rec. doc. 32-1].

As instructed by the Court, on December 28, 2016, counsel for Adams notified the Court that he could not properly oppose the motion for summary judgment without first obtaining discovery. Accordingly, the Court allowed Adams an opportunity to conduct discovery on the issues raised in the motion for summary judgment [rec. doc.

34]. Thereafter, on March 10, 2017, plaintiff's counsel advised that sufficient discovery had been completed for plaintiff to file an opposition to the motion for summary judgment. [rec. doc. 40].

In his supplemental opposition, Adams argues that seaman status in the context of a claim for exemption from the maximum hour requirements under the FLSA is an affirmative defense which must be adequately pled by the defendant- employer in its answer and upon which the defendant- employer has the burden of proof.  Adams argues that All Coast did not adequately plead the defense in its answer because it did not allege facts that if true would allow this Court to conclude that Adams is an exempt seaman.  Adams further argues that seaman status under the FLSA is narrowly construed against the employer and that a job title alone is insufficient.  Rather, it must be shown that, in each and every work week, 80% of the employee's work was subject to the authority, direction and control of the master aboard a vessel, that the employee's work related primarily to the operation of a vessel as a means of transportation and that the employee worked on a documented or numbered vessel.  Adams contends job tickets attached to his opposition demonstrate that he spent in excess of 20% of every work week engaged in non-seaman's work. This work included supporting the exploration for oil and gas by operating a crane for coil tubing operations and the removal of casing from oil and gas wells. [rec. doc. 45]. Adams contends this is the type of work engaged in by all oil and gas exploration workers regardless of whether the oil

4

and gas drilling is onshore or offshore, and has nothing to do with the operation of a vessel as a means of transportation.

In its supplemental reply memorandum, All Coast argues that it properly pled the seaman exemption in its answer because notice of the affirmative defense is all that is required. All Coast further argues, as it did in its original reply memorandum, that it has satisfied its burden to show that Adams was an exempt seaman. More specifically, All Coast argues that contrary to plaintiff's argument, the focus of seaman status determination is not on a week by week analysis, but rather, "the determining factors should be the general nature of the work the employee most often performs in his particular position and the primary purpose of the position the employee occupies." *Owens v. SeaRiver Maritime, Inc.*, 272 F.3d 698, 703 at fn. 5 (5th Cir. 2001).

All Coast provided a photograph of the M/V Rainbow Runner, a self-propelled lift boat of which Adams was a member of the crew. According to Jarred affidavit provided by All Coast in its original reply brief, Adams was employed as an Able Bodied seaman who ate, slept, lived and worked on the lift boat. Although not specific to Adams, the remainder of the affidavit indicates Able Bodied seamen were required to perform seaman's duties while aboard the vessel. All Able Bodied seamen were required to be able to operate the crane. The crane was used to move cargo, supplies and people around on the lift boat as well as onto other vessels. The duties of the Able Bodied seamen are for the aid of the vessel as a means of transportation and to ensure

5

that the vessel was operated safely.  These duties are critical to the mission of the vessel.

Finally, All Coast argues that the crane should be considered an appurtenance of the lift boat, which is critical to the vessel's mission, and Adam's operation of this appurtenance is a seaman's duty.

With respect to the job tickets submitted by Adams, All Coast submitted a second affidavit of Mr. Jarred who states that the job tickets "do not reflect the work that William Adams or any other employee was performing on a certain day.  Instead, the description [in the job tickets] indicates the reason why the third party leased the lift boat from All Coast.  This information was recorded for internal marketing and planning purposes." [rec. doc. 46-1].

**APPLICABLE LAWAND ANALYSIS**

**I.** *Summary Judgment Standard*

Under Fed.R.Civ.P. 56(a), summary judgment is mandated when the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Am. Home Assurance Co. v. United Space Alliance, LLC*, 378 F.3d 482, 486 (5th Cir. 2004); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Minter v. Great American Insurance Co. of New York*, 423 F.3d

460, 465 (5th Cir. 2005). A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252; *Thorson v. Epps,* 701 F.3d 444, 445 (5th Cir. 2012) (citations omitted).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine issue of material fact. *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007), *citing Celotex Corp. v. Catrett*, 477 U.S. at 323. If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact. *Id*. In such cases, the non-movant may not rest upon the allegations in his pleadings, but rather must go beyond the pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S at 325. All facts and justifiable inferences are construed in the light most favorable to the nonmovant. *Brumfield*, 551 F.3d at 326 *citing Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Thorson,* 701 F.3d at 445. However, metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions and those supported by only a scintilla of evidence are insufficient. *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994).

An employer who asserts an exemption from the FLSA overtime wage provisions

bears the burden of proof that the exemption applies. *Halle v. Galliano Marine Service, LLC.* 2017 WL 1399697 *2, — F.3d — (5th Cir. 4/19/17); *Dole v. Mr. W Fireworks, Inc.*, 889 F.2d 543, 545 (5th Cir.1989), *cert. denied*, 495 U.S. 929 (1990). Because All Coast advances the affirmative defense of the seaman status exemption, All Coast bears the burden of showing the defense is applicable, and the burden then shifts to the Adams to show that the defense is not applicable only if All Coast carries its initial burden.

## II. *Standard Applicable to the Seaman Exemption*

The FLSA's overtime provisions generally provide that an employer may not employ an employee for a work week longer than forty hours, unless the employee is compensated for any additional hours at one and one-half times the employee's regular pay rate. 29 U.S.C. § 207(a)(1). The overtime requirements do not, however, apply to "any employee employed as a seaman." 29 U.S.C. § 213(b)(6). Congress did not define seaman, therefore, the Fifth Circuit turns to the Department of Labor regulations for guidance which it has repeatedly "held to be entitled to great weight." *Halle,* 2017 WL 1399697 *2 fn. 3 citing *Coffin v. Blessey Marine Services, Inc.*, 771 F.3d 276, 279 (5th Cir. 2014)*; accord Dole v. Petroleum Treaters, Inc.*, 876 F.2d 518, 521 (5th Cir.1989).

Generally, a vessel's crew members are seamen, so long as they meet the criteria

in 29 C.F.R. § 783.31.  *Coffin*, 771 F.3d at 279 *citing* 29 C.F.R. § 783.32.[1]  Section 783.31 outlines the criteria for seaman status under the FLSA as follows:

> [A]n employee will ordinarily be regarded as "employed as a seaman" if he performs, as master or subject to the authority, direction, and control of the master aboard a vessel, service which is rendered primarily as an aid in the operation of such vessel as a means of transportation, provided he performs no substantial amount of work of a different character. . . .

As to the second prong, the Fifth Circuit has previously noted that "this provision just means that the employee must be a (more or less) full-time member of the marine crew, that is, the crew that is responsible for operating the ship. *Harkins v. Riverboat Servs., Inc.*, 385 F.3d 1099, 1104 (7th Cir. 2004).  This reading is consistent with our own precedent in which we attempt to give the term seaman its ordinary meaning." *Coffin,* 771 F.3d at 281 *citing Dole*, 876 F.2d at 523. However, in the most recent decision by the Fifth Circuit, the court stated as follows:

> We first reiterate a concept long-recognized by this Court: the definition of "seaman" in the Jones Act is not equivalent to that in the FLSA. *Petroleum Treaters,* 876 at 520. The two acts are "separate and independent of each other." *Id*. While the Jones Act interprets seaman "broadly to maximize the scope of the remedial coverage," the exemptions under the FLSA "have been drawn narrowly ... to minimize the number of employees who lose the Act's protections." *Id*. at 522–23. Compare *Barrett v. Chevron, U.S.A., Inc*., 781 F.2d 1067, 1070 (5th Cir. 1986) (describing the "expansive interpretation" given to the word "seaman" in the Jones Act), with *Brennan v. Greene's Propane Gas Serv., Inc*., 479 F.2d 1027, 1032 (5th

---

[1]The enumerated positions in the regulation are exemplary, not exclusive.  *Coffin*, 771 F.3d at 283.

Cir. 1973) (noting how exemptions to the FLSA are construed narrowly against the employer). Given these differences, it is error for a court to resolve an FLSA case by resorting to legal standards, such as the definition of a "seaman" or an "appurtenance," from Jones Act caselaw.

*Halle*, 2017 WL 1399697 at *2.

This narrow construction complies with the remedial purpose of the FLSA as set forth in the Legislative History and Judicial Construction of the Exemptions section of the regulations:

> In construing the Fair Labor Standards Act, as a remedial statute passed for the benefit of all workers engaged in commerce, unless exempted, the courts concluded that giving a liberal interpretation of the term "seaman" as used in an exemptive provision of the Act would frustrate rather than accomplish the legislative purpose.

29 C.F.R. §783.29(c)

While "the ultimate determination of whether an employee is exempt . . . is properly characterized as a conclusion of law," the Fifth Circuit has recognized that "the application of the seaman exemption generally depends on the facts in each case." *Coffin,* 771 F.3d at 279, 280 *citing Dalheim v. KDFW-TV,* 918 F.2d 1220, 1226 (5th Cir. 1990) and *McLaughlin v. Boston Harbor Cruise Lines Inc.* 419 F.3d 47, 51-52 (1st Cir. 2005) (recognizing that application of the seaman exemption is a fact-intensive question that can be answered in many cases only after a trial); *Halle,* 2017 WL 1399697 *2.

Against this backdrop and the two most recent decisions of the Fifth Circuit on

this subject, the Court concludes that there is insufficient factual evidence in this record to determine whether the exemption is applicable as a matter of law. As such, All Coast has not met its burden. However, since very minimal discovery has been undertaken, the Court recommends that the motion be denied as premature without prejudice to All Coast's right to re-urge the motion once discovery is completed.

### III. *The Evidence Does Not Meet All Coast's Burden*

While it is not disputed that Adams was subject to the authority, direction and control of the master of the Rainbow Runner,[2] the real dispute in this case is the determination of whether Adams' work was "primarily offered to aid the vessel as a means of transportation, [and that Adams] does not perform a substantial amount of different [non-seaman] work."[3] Non-seaman work is "substantial" if it "occupies more than 20 percent of the time worked by the employee during the work week." *Coffin,* 771 F.3d 279-80*,* 29 C.F.R. § 783.37, *Halle,* 2017 WL 1399697 *\*2*. Although the Fifth Circuit applies the 20% rule promulgated by the Department of Labor, the court has explained that the 20% rule is not to be applied in "a strict, mechanical fashion". This is because "the amount of nonseaman's work [a seaman] performs can vary from week to

---

[2]The Able Bodied Seaman Job Description provided by All Coast expressly states that the Able Bodied Seaman "Reports To: Captain." [rec. doc. 32-1, pg. 3].

[3]Adams correctly notes that All Coast has not established that the Rainbow Runner is a documented vessel, but this Court suspects that the appropriate documentation is in possession of All Coast.

week" and would produce an absurd result - crew members of a vessel intermittently losing seaman status without any change in basic assignment or position. *Owens,* 272 F.3d at 702 n. 5; *Coffin*, 771 F.3d at 281, *Halle,* 2017 WL 1399697 fn. 4. Accordingly, the *Owens* court instructed that "[r]ather than focus on a week by week analysis, the determining factors should be the general nature of the work the employee most often performs in his particular position and the primary purpose of the position the employee occupies." *Id.*

Likewise, in *Coffin,* the court stated "[c]ritically, the context in which work is done can affect whether it is seaman or nonseaman work . . . ." *Coffin*, 771 F.3d at 283. Whether an employee is "employed as a seaman" requires evaluation of an employee's duties based on "the character of the work he actually performs and not on what it is called or the place where it is performed." *Coffin*, 771 F.3d at 280 *citing* 29 C.F.R. § 783.33;[4] *Halle* 2017 WL 1399697 *2. For work which is "neither inherently seaman nor nonseaman work, . . . its character depends on the context in which it is performed." *Coffin,* 771 F.3d at 283.

In *Halle,* the court stated "the critical issue in analyzing this prong is determining whether the 'primary purpose' of the particular individual's work is safe navigation of

---

[4]"Merely because one works aboard a vessel . . . or may be articled as a seaman . . . or performs some maritime duties . . . one is not employed as a seaman within the meaning of the Act unless one's services are rendered primarily as an aid in the operation of the vessel as a means of transportation . . . ." 29 C.F.R. § 783.33 (internal citations omitted).

the ship." *Halle,* 2017 WL 1399697 at *3. The court drew the comparison between tankermen in *Owens* whose primary purpose was to get cargo on and off a barge, and tankermen in *Coffin* who were responsible for "constant monitoring of barges to ensure safe navigation". *Id.* The former were non-seamen and the latter were seamen.

While Adams argues that All Coast must demonstrate that 80% of each of Adam's work weeks were spent with Adams engaged in seaman work, as set forth above, the jurisprudence does not require such specificity. *Owens,* 272 F.3d at 702 n. 5; *Coffin*, 771 F.3d at 281. The affidavit of Mr. Jarred sets forth the following facts. Adams was employed by All Coast as an Able Bodied Seaman, who ate, slept, lived and worked aboard the vessel to which he was assigned. [rec. doc. 32-1, pgs. 1-2 at ¶ 3]. Adam's last such assignment was to a boat consisting of four crew members, a Captain, Mate, Able Bodied Seaman and an Ordinary Seaman. [*Id*. at ¶ 4]. Adam's job description required that an Able Bodied Seaman be able to operate hydraulic cranes which are "used to move cargo, supplies, and people around on both the liftboat and onto other vessels." [*Id*. at ¶ 5]. In addition, Able Bodied Seamen have the following "essential duties and responsibilities", including "bridge watch activities", "experience and knowledge with all deck equipment, machinery and hydraulic cranes", "capability to operate mooring winches", "coordinates and plans all cargo handling, inspects and secures cargo to ensure for a safe and efficient operation and maintains crane, riggings, mooring winches and deck hardware", keep deck and crane logs", "train deck crews",

"watch for obstructions in vessel's path", "stands watch at bow or on wing of bridge to look for obstructions in path of vessel", "turns wheel on bridge or uses emergency steering apparatus to steer vessel as directed by Captain or Mate" and "paint and chip rust on deck or superstructure of vessel." [rec. doc. 32-1, pg. 3-4].

The "functional job description" summarizes the duties of an Able Bodied Seaman as follows:

> Employee is responsible for the safe, efficient, reliable, and environmentally complaint operation of assigned area. An AB Seaman is required to be licensed, experienced and knowledgeable with all deck equipment, machinery, and duties on board a vessel. An AB Seaman must be or able to be certified or recertified to operate on board hydraulic cranes. Must have the capability to operate mooring winches as directed. Coordinates and plans all cargo handling. Inspects and secures cargo to ensure for a safe and efficient operation. Maintains cranes, riggings, mooring winches and deck hardware. Must be able to splice rope and cable. Must be able to keep deck and crane logs. Must be able to train deck crews of all required duties on board. The Seaman performs any combination of the following duties aboard ship: Stands lookout, steering and engine room watches, attaches slings, hooks, and other lifting devices to cables, booms, and hoists, loads equipment and supplies aboard vessel by hand otr using hoisting equipment, signals other workers to move, hoist, and position loads, washes deck and other equipment using brush, detergent, and water, lubricates, adjusts and makes minor repairs to engines and equipment, secures and removes vessel's docking lines to and from docks and other vessels or platforms.

[*Id*. at pg. 6].

The qualifications and experience required for the Able Bodied Seaman position includes having passed a USCG exam and the possession of an AB Certificate. [*Id*. at pg. 4]. Because of the special licence possessed by Adams, the vessel could not operate

14

without him onboard. [*Id*. at ¶ 4].

If it was undisputed that these general job duties all applied to Adams and were what "he most often performs in his particular position and the primary purpose of the position [he] occupies," the Court could conclude as a matter of law that the exemption applies. However, that is not the case on the record before the Court.

Adams's contends his "primary" work was operating the crane in the context of oilfield exploration and construction activities. Adams cites 29 C.F.R. §783.34 which provides support for the proposition that even members of the crew of a vessel whose "dominant work" was non-seaman work, i.e. construction or industrial activity, would not be subject to the exemption. The job tickets establish that during the month of July 2013, most of the days of work involved "coil tubing ops - crane ops." [rec. doc. 43, p. 13]. The majority of the entries for the month of October and November of 2013 are delineated as "working with divers", however, there is no indication that crane operations were ongoing. [Id.] In the first few months of 2014, there are multiple indications of crane operations but this Court cannot discern from this record whether (a) that involved Mr. Adams as a majority of his work - a point All Coast contests or (b) simply the reason the Rainbow Runner was chartered - a point All Coast contends is the truth in the affidavit which the plaintiff contests.

In short, there is a genuine issue of material fact as to whether the work delineated in the job tickets was the work Adams "most often performs in his particular

15

position and the primary purpose of the position [he] occupies." Drawing, as the Court must, every inference in favor of Adams, the Court cannot find that All Coast has established the applicability of the exemption as a matter of law. The testimony of Adams and/or his co-employees would be useful in this regard but that discovery has not yet been undertaken.

## CONCLUSION

Therefore, based on the foregoing, it is the finding of this Court that All Coast has not met its burden to show the exemption for seamen applies as a matter of law. However, given the paucity of discovery conducted in this case, it is recommended that the motion for summary judgment be denied as premature without prejudice to the right of All Coast to re-assert the motion upon completion of discovery pertinent to the work Adams most often performs in his particular position and the primary purpose of the position he occupies.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within**

**fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglas v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

Signed this 28th day of April 2017, at Lafayette, Louisiana.

_____
**PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE**