UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| WILLIAM ADAMS ET AL. | CIVIL ACTION |
|---|---|
| VERSUS | NO. 16-1426 |
| ALL COAST, LLC | SECTION: "H" |

### ORDER AND REASONS

Before the Court are Defendant's second Motion for Summary Judgment (Doc. 168) and Plaintiffs' Daubert Motion to Exclude Defendant's Expert Todd Pellegrin (Doc. 170). For the following reasons, Defendant's second Motion for Summary Judgment is **GRANTED**, and Plaintiffs' Daubert Motion is **DENIED**.

### BACKGROUND

This action arises out of Defendant All Coast, LLC's ("All Coast" or "Defendant") alleged failure to pay Plaintiffs overtime compensation as required by the Fair Labor Standards Act ("FLSA" or "the Act").[1] All Coast operates a fleet of liftboats that service offshore oil and gas platforms in the Gulf of Mexico. Plaintiffs were employed by All Coast to work aboard the liftboats in different capacities, including cooks, mates, deckhands, ordinary seamen ("OS"), and able-bodied seamen ("AB"). Plaintiff William Adams initially brought this suit as a collective action on behalf of himself and other

---

[1] *See* 29 U.S.C. § 201 *et. seq.*

1

similarly situated employees of All Coast to recover unpaid overtime wages.[2] The Court subsequently granted conditional class certification for "Cooks; Mates; Deckhands; Ordinary Seaman; and Able-Bodied Seaman employed by All Coast, LLC in the workweeks in which they were employed in these classifications in the [three years preceding November 2017], except for those employees who signed waiver and release agreements."[3]

All Coast filed a Motion to Dismiss for Failure to State a Claim that was subsequently converted into a Motion for Summary Judgment.[4] All Coast asked the Court to find that Plaintiffs were exempt seamen under FLSA and therefore not entitled to the Act's overtime requirements. The Court adopted the Magistrate Judge's Report and Recommendation denying the Motion without prejudice as premature.[5] The parties have since conducted significant discovery. All Coast filed the instant Motion for Summary Judgment, again urging the Court to find that Plaintiffs are exempt from FLSA's overtime requirements because they are seamen.[6] Plaintiffs also filed the instant Daubert Motion, seeking to exclude the testimony of All Coast's expert, Todd Pellegrin.[7]

FLSA requires employers to provide overtime pay to any employee who works more than forty hours per week unless an exemption applies.[8] Defendant All Coast argues that Plaintiffs are exempt under the seaman exemption and therefore, Plaintiffs' claims should fail as a matter of law.[9] Plaintiffs argue that they are not seamen and are consequently entitled to avail

---

[2] *See* Doc. 1.
[3] Doc. 85 at 1.
[4] *See* Docs. 16, 33.
[5] *See* Doc. 57.
[6] *See* Doc. 168.
[7] *See* Doc. 170.
[8] 29 U.S.C. §§ 207, 213.
[9] *See id*. § 213(b)(6).

2

themselves of FLSA's overtime provisions. The Act itself does not define the term "seaman."

Plaintiffs argue that, with the exception of the cooks, the bulk of their jobs involved operating a crane aboard the liftboat as opposed to performing traditional maritime duties. Plaintiffs aver that the significant crane operations they performed render them non-seamen. Defendants argue that Plaintiffs are seamen exempt from FLSA's overtime requirements because "[t]he amount of time the plaintiffs spent operating the crane, whether 10% of their time or 100% is irrelevant because crane operation is seaman's work that aids the vessel as a means of transportation."[10] The Court agrees with Defendant.

## **LEGAL STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[11] "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[12] Nevertheless, a dispute about a material fact is "genuine" such that summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[13]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws

---

[10] Doc. 168-11 at 13–14.
[11] FED. R. CIV. P. 56.
[12] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[13] *Id*. at 248.

all reasonable inferences in his favor.[14] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[15] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[16] An employer who asserts an exemption from FLSA's overtime wage provisions bears the burden of proof that the exemption applies.[17]

"In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial."[18] The Court does "not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[19] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[20]

## LAW AND ANALYSIS

The determination of whether an employee's activities place that employee within a FLSA exemption is a question of law; however, the question

---

[14] Coleman v. Hous. Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997).
[15] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[16] Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
[17] Halle v. Galliano Marine Serv., L.L.C., 855 F.3d 290, 293 (5th Cir. 2017); *see also* 29 C.F.R. § 783.21.
[18] Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[19] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 393–94 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[20] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

4

of what an employee's work activities entail is a question of fact.[21] "The line of demarcation between seamen and non-seamen is not distinctly drawn, and probably cannot be. It depends a good deal upon the facts in each case, especially upon the character of the work that is principally engaged in."[22] Further, an employer who claims an exemption under the Act has the burden of showing that it applies.[23]

While FLSA does not provide a definition for "seaman," the Department of Labor ("DOL") regulations provide some guidance.[24] Generally, a vessel's crew members are seamen, so long as they meet the criteria in 29 C.F.R. § 783.31.[25] Section 783.31 provides:

> [A]n employee will ordinarily be regarded as employed as a seaman if [1] he performs, as master or subject to the authority, direction, and control of the master aboard a vessel, [2] service which is rendered primarily as an aid in the operation of such vessel as a means of transportation, provided he performs no substantial amount of work of a different character.[26]

The regulations also provide that "work other than seaman work becomes substantial if it occupies more than 20 percent of the time worked by the employee during the workweek."[27] Thus, if an employee spends more than 20% of his time doing non-seaman's work, he will not be a "seaman" under FLSA, and consequently, he will not be exempt from its overtime provisions. Courts

---

[21] *See* Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986) ("The question of how the respondents spent their working time on board the Arctic Star is a question of fact. The question whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law.").
[22] Walling v. Bay State Dredging & Contracting Co., 149 F.2d 346, 351 (1st Cir. 1945).
[23] 29 C.F.R. § 783.21; Walling v. Gen. Indus. Co., 330 U.S. 545, 548 (1947).
[24] The Fifth Circuit has held that the Department of Labor regulations are entitled to great weight. Dole v. Petroleum Treaters, Inc., 876 F.2d 518. 521 (5th Cir. 1989) (citing Tony & Susan Alamo Found v. Sec'y of Labor, 471 U.S. 290, 297 (1985)).
[25] 29 C.F.R. § 783.32; Coffin v. Blessey Marine Servs., Inc., 771 F.3d 276, 279 (5th Cir. 2014).
[26] 29 C.F.R. § 783.31.
[27] *Id.* § 783.37.

must "evaluate an employee's duties based upon the character of the work he actually performs and not on what it is called or the place where it is performed."[28]

### A. Cooks

The Court will first address the issue of whether All Coast cooks are "seamen" under FLSA. "The term 'seaman' includes members of the crew such as . . . cooks . . . if, as is the usual case, their service is of the kind described in § 783.31."[29] "A cook is *usually* a seaman because he usually cooks *for* seamen."[30] Here, Plaintiffs and Defendant agree that All Coast cooks prepared food for both crewmembers and third parties. If "the cooks spent more than 20% of their time preparing food for non-crew members," then "they are not seamen under the FLSA."[31] Only one Plaintiff, Erwin Thibodeaux, was deposed regarding his work as a cook. This testimony reveals that as a cook, Plaintiff Thibodeaux was under the command of the vessel's captain; ate, slept, and lived aboard the vessel; and cooked for crewmembers and third parties.[32] Crucially, Plaintiff Thibodeaux testified that for every meal he cooked, All Coast crew members ate.[33] While third parties may have been on board at times and consumed the cook's food, the crewmembers were served each and every meal prepared by the cook. Consequently, the Court finds that All Coast cooks are "seamen" for FLSA because they cooked primarily for All Coast crewmembers.

### B. Mates, Deckhands, Ordinary Seamen, and Able-Bodied Seamen

---

[28] *Coffin*, 771 F.3d at 280 (citing 29 C.F.R. § 783.33).
[29] 29 C.F.R. § 783.32.
[30] Martin v. Bedell, 955 F.2d 1029, 1036 (5th Cir. 1992).
[31] *Id*.
[32] Doc. 173-11 at 14, 18–20.
[33] *Id*. at 19.

6

As to the remaining All Coast job positions at issue, the parties do not dispute that the first prong of the seaman exemption is satisfied: each Plaintiff was answerable to the captain of his assigned vessel. The parties also do not dispute what the Plaintiffs' work activities entailed. Instead, the parties dispute whether those work activities, as a matter of law, qualify Plaintiffs as "seamen."

The evidence presented by the parties demonstrates the following undisputed facts. All Plaintiffs, regardless of their position, were assigned to a particular All Coast liftboat vessel as a crew member. The liftboats were chartered by other companies to transport people and equipment on the liftboat to a worksite offshore. While on hitch, Plaintiffs ate all of their meals on the vessel and slept aboard the vessel. Each deposed Plaintiff agreed that the official All Coast job descriptions, whether for the position of Mate, AB, OS, or Deckhand, accurately reflected their job duties and responsibilities.[34] However, each deposed Plaintiff also noted that crane operations—not listed on the job descriptions—were a significant part of their job duties. The cranes were used to transport personnel, supplies, and equipment back and forth between the liftboat and the dock, the liftboat and the worksite platform, the liftboat and other vessels, and within the liftboat itself. Plaintiffs spent between 25% and 90% of their day operating the crane.[35]

---

[34] These job descriptions include duties like standing look out, steering, engine room watches, attaching lifting devices to cables, washing the deck, loading equipment and supplies onto the vessel, splicing rope, and making minor repairs. *See* Docs. 168-6, 168-7, 168-8, 173-2, 173-5.

[35] Plaintiff Christopher Robinson, employed as a Mate, testified that 75% of his time was spent operating the crane. Docs. 168-6 at 24, 173-10 at 13. Plaintiff Rynell Wesley, also employed as a Mate, testified that 50% of his time was spent operating the crane. Docs. 168-6 at 76, 173-13 at 8. Plaintiff Cody Migues, employed as an OS, testified that 25% of his time was spent operating the crane. Docs. 168-7 at 47–48, 173-9 at 173-9 at 18–19. Plaintiff Joe Adams, employed as an AB, testified that 70% of his time was spent operating the crane. Docs. 168-8 at 18, 173-8 at 5. Plaintiff Syronne Coney, also employed as an AB,

Plaintiffs and Defendant agree that the listed job duties on the official All Coast job descriptions constitute seaman's work.[36] The parties also agree on the amount of time that Plaintiffs spent operating cranes. However, the parties dispute whether crane operations constitute seaman's work. Because the Plaintiffs spent more than 20% of their time operating the crane, if crane operation—in this context—is not seaman's work under FLSA, then Plaintiffs performed a substantial amount of non-seaman's work and hence cannot qualify as seamen for purposes of FLSA. However, if crane operation—in this context—is seaman's work, then Plaintiffs' claims fail as a matter of law because they would be classified as exempt seamen under FLSA and not entitled to overtime pay.

The DOL regulations define seaman's work as a "service which is rendered primarily as an aid in the operation of [a] vessel as a means of transportation."[37] To determine if crane operations aids the vessel as a means of transportation, the Court must evaluate the Plaintiffs' work "based upon the character of the work . . . and not on what it is called or the place where it is performed."[38]

On All Coast chartered liftboats, cranes were used to move people and supplies off of and onto the liftboat at various locations. The crane, therefore, functioned to load and unload cargo from the liftboat. The Fifth Circuit has noted "with some caution that [w]orkers who are primarily concerned with loading and unloading cargo are not, *generally speaking*, seamen within the

---

testified that more than 50% of his time was spent operating the crane. Docs. 168-8 at 78, 173-7 at 26. Plaintiff William Adams testified that he spent 90% of his time operating the crane when he was employed as an AB and 85% of his time operating the crane when he was employed as a deckhand. Docs. 168-8 at 43–45, 173-12 at 7.

[36] *See supra*, n. 34.
[37] 29 C.F.R. § 783.31.
[38] *Coffin*, 771 F.3d at 280 (citing 29 C.F.R. § 783.33).

8

meaning of the FLSA."[39] However, unloading and loading cargo is not *per se* non-seaman's work because courts must "*always* consider the factual context when deciding whether an employee is exempt."[40] The Court therefore looks to other similar factual circumstances to determine whether crane operations, in this context, constitutes seaman's work.

In *Owens v. SeaRiver Maritime, Inc.*, the Fifth Circuit held that the plaintiff was not a seaman under FLSA.[41] The plaintiff was assigned to a "strike team" stationed on a permanently-moored, land-based, landing barge. The strike team was responsible for loading and discharging product from unattended barges, and this was primary purpose of plaintiff's job. The plaintiff was not a member of a towboat crew and was not tied to any vessel for the duration of the voyage.[42] The Fifth Circuit found that because loading and unloading barges merely prepared the vessel for navigation and did "not aid in its actual *operation* as a means of transportation," the strike team work was non-seaman's work.[43]

Conversely, in *Coffin v. Blessey Marine Services, Inc.*, the Fifth Circuit found that a vessel-based tankerman, whose primary duties involved loading and unloading barges, was a seaman for purposes of FLSA.[44] The Fifth Circuit distinguished the facts in *Coffin* from *Owens* in reaching its conclusion. Unlike the plaintiff in *Owens*, the *Coffin* plaintiff lived and worked on the towboat to which he was assigned; was answerable to the vessel's captain; shared the nineteen duties that deckhands performed along with his primary loading and

---

[39] *Id.* (brackets and italics in original) (citing Owens v. SeaRiver Maritime, Inc., 272 F.3d 698, 704 (5th Cir. 2001)).
[40] *Id.* (emphasis in original).
[41] 272 F.2d 698 (5th Cir. 2001).
[42] *Id.* at 700.
[43] *Id.* at 704 (emphasis in original).
[44] 771 F.3d 276 (5th Cir. 2014).

9

unloading duties; and was expected to perform work on barges that were towed, not simply stationary.[45]

The Fifth Circuit in *Coffin* repeatedly emphasized that "the character of loading and unloading duties might change when a member of a vessel-based crew performs such duties."[46] The Fifth Circuit stated:

> Naturally, when an individual lives aboard the vessel that he or she loads or unloads, this living situation will affect the character of his or her duties. In *Owens*, the tankermen were divorced from the subsequent navigation of the barge. By contrast, the Plaintiffs here recognized that their loading and unloading duties were integrated with their many other duties.[47]

The court found that the *Coffin* plaintiff's loading and unloading duties were integrated with other standard seaman's duties "because doing his job improperly meant that the barge would get stuck when traveling down a river or canal . . . . [and] that performing [his] loading and unloading duties effectively made [his] jobs and the captain's job easier."[48]

The Fifth Circuit ultimately held that the *Coffin* plaintiff was a seaman because, as a vessel-based employee, he "performed [his] loading and unloading duties with an eye toward navigation *and* [was] required to perform such duties safely so that the vessel could safely operate on inland and oceanic waterways."[49] While the "evidence in *Owens* was insufficient to suggest that loading and unloading assisted the vessel's operation, [the Fifth Circuit] did not categorically reject the relevance of such evidence in other cases,

---

[45] *Id.* at 278, 280.
[46] *Id.* at 281.
[47] *Id.* at 283 (internal citation omitted).
[48] *Id.* at 284 (emphasis in original).
[49] *Id.* (emphasis in original).

10

particularly when the work in question is performed by a member of the vessel's crew."[50]

In *Johnson v. Canal Barge Co.*,[51] the Southern District of Texas found that the plaintiff, a vessel-based tankerman, was a seaman. The court applied four principles from *Coffin* in reaching its finding: (1) the plaintiff was subject to the control of the master of the vessel; (2) the plaintiff was a member of the marine crew responsible for operating the ship; (3) the plaintiff ate, slept, lived, and worked on the vessel; and (4) the plaintiff's job of loading and unloading cargo had implications for the seaworthiness and efficient movement of the defendant's barges.[52] In support of the last principle, the court explained that uncontradicted evidence showed that the plaintiff's loading and unloading of cargo implicated the safety of the vessel on which he was a crew member.[53]

The facts of this case more closely resemble *Coffin* and *Johnson* than *Owens*. The Plaintiffs here were subject to the control of the vessel's master; were members of the crew assigned to a particular vessel; and ate, slept, lived, and worked on the vessel. They had duties and responsibilities that resembled typical seaman's work.[54] Crucially, however, the Plaintiffs' crane operations had implications for the seaworthiness and efficient movement of the vessel.

Plaintiff Christopher Benjamin testified that operating a crane is hazardous, and that while operating the crane, he has to watch out for other All Coast crew members, crew members of other vessels, the position of the boat, and the position of the platform.[55] Plaintiff Syronne Coney testified that operating a crane is fatally hazardous to crew members onboard the vessel,

---

[50] *Id.* at 281.
[51] 181 F. Supp. 3d 413 (S.D. Tex. 2016).
[52] *Id.* at 416–17.
[53] *Id.* at 418.
[54] *See supra*, n. 34.
[55] Doc. 173-6 at 9.

11

crew members onboard other vessels, and personnel on platforms.[56] Plaintiff Cody Migues testified that crane operations are hazardous and that safety is important for crane operations.[57] He stated, "You got to be safe. Every lift you pick up, it has to be safe, and it don't [sic] matter if the rigger is telling you to go up. You got to look at your ball, you know, make sure everything is centered, and then pick up the load."[58] He further stated that it is important to be mindful of environmental conditions like the weather and the sea.[59] Plaintiff Christopher Robinson testified that the main hazard with operating a crane is "striking personnel, your legs."[60] He also stated that crane operations were hazardous to seamen on other vessels and to personnel on oil platforms.[61]

The Court therefore finds that—in this specific context—the Plaintiffs' crane operations for Defendant All Coast constitute seaman's work because they are a "service which is rendered primarily as an aid in the operation of such vessel as a means of transportation." Plaintiffs consequently perform "no substantial amount of work of a different character." Accordingly, Plaintiffs are considered "seamen" for purposes of FLSA and are exempt from FLSA's overtime provisions.[62] Additionally, All Coast cooks are "seamen" because they cook primarily *for* seamen. Therefore, Plaintiffs' claims fail as a matter of law.

---

[56] Doc. 173-7 at 31.
[57] Doc. 173-9 at 21–22.
[58] *Id.* at 22.
[59] *Id.*
[60] Doc. 173-10 at 14.
[61] *Id.*
[62] The Court's conclusion is bolstered by the Supreme Court's recent pronouncement in Encino Motorcars, LLC v. Navarro, 138 S. Ct. 1134 (2018). There, the Supreme Court held that exemptions from FLSA should now be given a fair construction as opposed to a narrow one that had traditionally been applied by courts in the past. *Id.* at 1142.

## CONCLUSION

Considering the foregoing, Defendant's Motion for Summary Judgment is **GRANTED**, and Plaintiffs' claims are **DISMISSED WITH PREJUDICE**. Plaintiffs' Daubert Motion is **DENIED** as moot.

New Orleans, Louisiana this 15th day of October, 2019.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**